Whyte, J.
dissenting. The pleadings in this case present this question to the court, whether the judgment rendered in the supreme court in 1821, authorizes an execution to beawarded for its satisfaction,against the defendant, Ross, under the circumstances appearing in the record adduced in evidence under the first plea of nul tiel record?”
The issue on the plea of nul tiel record," depends upon the said judgment, not whether it is a regular or irregular judgment, but whether it is a nullity or not.
In order the more clearly to ascertain this, we must notice the manner in which Hickman and Ross appear connected on this record, with Sappington. First, as to Ross, he is one of the bail or sureties in appeal from the county to the circuit court in the suit of Jcnlcin White-.sides vs. Roger B. Sappington. The first enquiry is, what connection hath he with that suit by virtue of this character? Is it original, or adventitious only? The latter most certainly; for he is not a party with Sappington, but cxtraneously added, becoming an adjunct by the requisition of the law to the original suit, in the constitution of which he formed no part, and in its management af-terwards had no control.
This difference of character, or connection with the suit, produces different liabilities, and different remedies to enforce them. The liability of the one as principal or party, is for the demand of the plaintiff, and the judgment is a judgment to recover. The liability of the other is dependent, consequential, conditional, and in its nature and effect, operating by way of guarranty, and *364 the judgment is not a judgment of recovery, but a judgment or award (hat an execution issue to satisfy a recovery previously had and obtained. These principles are well established by numerous authorities, referred to in 2 Bacon’s Abt. 461, Wilson’s edition, and Tidd's Practice 1053, Lillie’s Entries 378, 379, 380.
From these precedents it will be seen, that the judgment against the principal, is different from the judgment against the bail or security, each being distinct from the other; that against the principal founded on the cause of action set forth in the plaintiffs declaration, being a judgment to recover; that against the bail, founded on the recognizance or bail bond, being a judgment awarding an execution. Hence it is pursuant to the general rule of the common law, that no person can bring a writ of error to reverse a judgment who is not party or privy to the record. If there is judgment against the principal, and also against the bail, the principal cannot have error on the judgment against the bail. (2 Lillie’s Entries 378. Cro. Car. 408. Nor the bail, on the judgment against the principal. Smith vs. Griffith, (Cro. Car. 481, same book, 561. Nor can they join in a writ of error. Lancaster vs. Keleigh and others, (Cro. Car. 300. Tidd’s Practice 1053.
I will now take a short review of our acts of Assembly, and see whether any of the principles of the common law are affected by them, and if so, to what extent; and also how far the forms of proceedings are changed by the modifications introduced by their enactment.
The first act of Assembly on the subject, is 1777, ch. 2, sec. 22, upon appeals. It says, “when any person, either plaintiff or defendant, shall be dissatisfied with the judgment of the county court, he may appeal on such judgment, to the superior court of law: but before obtaining the same shall enter into bond, with two sufficient securities for prosecuting the same with effect, and for performing the judgment, &c. of the superior court.”— Section 23 allows a writ of error, the party entering into bond as before directed in cases of appeals. The manner *365 of prosecuting appeals, with the judgment thereon in the superior court, is prescribed in the thirty-fourth section; and the same as to writs of error in the thirty-fifth sec-ticn. In the former, the act says, “and if such transcript of the record is not filed within the time aforesaid, or if the appellant shall fail to appear, or to prosecute his appeal, then the judgment of the county court shall be affirmed in the superior court.” And in the latter, the act says, “and in case the plaintiff in error shall neglect to file such writ, and assign error as aforesaid, or shall fail to appear and prosecute the same, then the judgment of the county court shall be affirmed, and he shall he adjudged to pay double costs.”
Upon these sections, prescribing the manner of prosecuting appeals and writs of error, with the respective judgments to be rendered thereon in the superior court when the judgments are affirmed, it will be noticed that they have no reference or allusion whatever to the securities in the appeal, or writ of error. The language of the sections speaks of the parlies to the suits only, and points to the appellant as the plaintiff in error. The section saying the judgment of the county court shall be affirmed, excludes the idea of the bail or sureties being comprehended in«the judgment to be rendered in the superior court. This act, however, altered the form of taking the bail or surety upon the appeal and writ of error, from what if was before, and at the common lav/; that was by recognizance acknowledged in court, or before a judge at his chambers, h) statute 4 William and Mary, ch. 4. The act (sec. 22,) directs the appellant to enter into bond with two sufficient securities, which is to be done in open court, for it is to be done after the appeal is prayed, and before it is granted; and by section 83, the same is to be done on allowing a writ of error. But the mode of proceeding against the bail or sureties, is not changed; that is by scire facias on the recognizance, and also upon the bond, for there is no difference; both are obligations of record, the first without the names of the sureties subscribed, the latter with *366 them: or in lieu of the scire facias, an action of debt might be brought.
This mode of proceeding against bail continued until when a new provision was made by the second section of the second chapter of the acts of Assembly of that year. That section states that frequent injustice has happened to many suitors from the delay incident to appeals, and for remedy enacts, “that when the court before whom the appeal shall be terminated shall affirm the judgment, then the appellant shall pay 124 per cent in'terest from the rendition of the judgment in the county court, and the bonds taken for the prosecution of the appeal with effect, shall be made part of the record sent up to the superior court, on which judgment may be instan* ter entered up against the appellant and his securities.
Thus the act of 1785 altered the mode of proceeding against the bail or sureties in appeals. Instead of suing •out a scire facias jn the county court on the bail or security bond, taken there for the purpose of obtaining the appeal, after the appeal was disposed of in the superior .court by affirmance; the' bail bond was by it directed to make part of the .record setit up'io the superior court) •and the superior court authorized, upon the determination of the appeal, by the affirmance of the judgment of the county court, to enter up judgment inslanter on the appeal bond against the appellant and his securities. This ■alteration in the manner of proceeding, did not affect .the rights or liabilities of the parties. The appellee had '.the same recourse, and to the same extent against the .bail, that he had before. By the interposition of this act, his course was shortened, but his demand not augmented upon affirmance of the judgment of the court below in the superior court. Instead of pursuing the bail by scire facias, to have judgment for the issuance of execution against them in the county court, he had given him, instanter, a second judgment in the superior court, being « like judgment to that on the scire facias, to wit, for the issuance of an execution against the bail, and against, the appellant likewise. The responsibility of the bail} *367 or sureties, was the same under this act that it was before.it, and was measured by their undertaking, and evidenced by the condition of their bond, that is, for performing the judgment the superior court shall pass or render in the appeal, The obligalion-of the appellant was notin-creased by this second dependent judgment of the superior court under this act awardingexccution jointly against him and the bail; for the like j’udgmont was the judgment rendered on the scire facias against him, where he had signed the bond with the bail, before the passage of this act of 1785.
In all cases under this act when the judgment of the county court is affirmed, there may be rendered a second judgment upon the prayer of the party. The first judgment may bo properly termed the principal judgment; it is had upon the original suit, between the original parties or their representatives, and it is a judgment of recovery. The second judgment may be called with propriety, the dependent judgment, for it depends upon the prior existence of the principal judgment for its own existence, being subsequent and consequential to, as well as dependent upon the principal judgment. It is not like the principal judgment, a judgment of recovery, but a judgment of award of execution for the amount of the recovery had by the principal judgment. The award of execution by this dependent judgment, does not necessarily supersede the issuance of an execution on the principal judgment, although it may effect all the purposes that an execution under each of them can effect, provided the property of the principal and the bail is situated in the same county.
The act of 1791, of this state, re-enacts the sections of the North Carolina acts of 1777 and 1785, above observed upon. The act of 1777, ch. 2, sec. 32, is transferred into 1794, ch. 1, sec. 63, and in like manner, other sections of the one are transferred into the other; 1785, ch. 3, sec. 2, of North Carolina, into 1794, ch. 1, sec. 62, and so of others.
The act of 1807, ch. 81, sec. 3, places writs of error or» *368 the same footing as appeals, and makes the like provision ior a principal and dependent judgment on them. It says «in all cases where said superior court shall affirm the j'udgment of a county court, brought up by writ of error, allowed either by a superior or county court, it shall be the duty of said superior court upon the motion of the defendant in error, to grant a judgment instantcr against the plaintiff in error and his securities, for the sum recovered in the county court; and to tax thereon 12í per cent, per annum, from the time such judgment may have been rendered in the county court, till the time of affirming such judgment in the superior court.”
Since the change of the court system in 1809, and the establishment of the supreme court, some few alterations are introduced into the proceedings upon error. By the act of 1809, ch. 49, sec. 26, the bail in error from the circuit court to the supreme court, are not as before liable to pay the debt, but only the damages for delay of execution and costs of the suit in error. And by the act of 1811, ch. 72, sec. 11, either party in any suit may, at the time in which judgment is rendered, pray an appeal in the nature of a writ of error, which the court is to grant, first taking bond with sufficient security from the party praying the same, for damages and costs, &c.; and by sec. 12, a writ of error may be obtained after the term within one year therefrom, upon the party suing out the writ, and before obtaining it, entering into bond with security. The appeal in nature of a writ of error, given by this act, is a substitute for the writ of error, and in its properties, after being taken, differs nothing from that writ.
Upon this view of the common law, and our statute law, taken in connexion with the record, the judgment of the supreme court of January term, 1821, against Ross, is a nullity as to him: he was not a party before that court by the regulations prescribed by the acts of assembly to make him a plaintiff in error, in which capacity the judgment was rendered against him; therefore the plaintiff, ‘Whitesides’ administrator, has failed to perfect the record in. the scire facias suggested.
*369 Íí is material to notice bow these parties stood in the circuit court upon the appeal coming there, and before the circuit court acted upon it. Roger B. Sappington was a party in the appeal as sole appellant, Whitesides was a party to the appeal as sole appellee, and Thomas Hickman and Daniel Ross, as bail, or sccu* rities in the appeal for Sappington, the appellant, who also entered into the appeal bond with them.
Such was the state of the proceedings in the appeal in the circuit court, at and before the circuit court tried the appeal. The record then shews the proceedings in the circuit court were regular, but informal; the suit was docketed in the same form as in the county court, the appellee Whitesides, being called plaintiff, and the appellant Sapr pington, defendant, which style obtained throughout the proceedings in that court. When it comes to thejudgment, it says, “therefore it is considered by the court here, that thejudgment of the county court be affirmed:” this is not complete; it ought to have gone further and said, “with 124 per cent, interest thereon from the rendition of the said judgment in the county court, and his costs, which he hath had adjudged by reason of the delay of execution of thejudgment aforesaid, by prosecuting the said appeal.” (Lilly’s Entries, 262. This addition to the common law judgment, is given by the acts of 1785, ch. 2, sec. 2; 1794, ch. 1, sec. 64; which say, “that when the court before whom such appeal may be determined, shall affirm the judgment, then shall the appellant be decreed to pay the appellee 124 per cent, interest, from the passing of the judgment in the county pourt, in which such appeal may have been granted.” The record of the circuit court next states the judgment which the act of assembly directs to be entered upon the bail bond, against the appellant and his securities instanter, after affirming the judgment of the county court against the appellant. This is done very inartifidally; it is in these words: “and that the plaintiff recover against the said defendant, and Thomas Hickman and Daniel Ross, his securities in appeal, f¡1367 50, the amount of the judgment in the county *370 court, with 124 per cent, interest thereon, from the 20tfa . * . , day of April, 1819, (the time the judgment was render-e(j jn county court,) until this day, and that the plain-tjff also recover against the said defendant and his securities aforesaid, his costs in this behalf expended, and that a fieri facias issue for the same.” Instead of this form, it ought to have been as follows: “therefore it is considered, that the said Jenkin have execution against the said Roger B. Thomas and Daniel, of the said several sums of money, to wit, the amount of the judgment of the county court, and of-dollars, to wit, the amount of the 124 per cent, interest from the time of passing the judgment in the county court, to its affirmance in the circuit court,. and of'-dollars, to wit: for his costs in the judgment of affirmance rendered in the appeal, of their goods and chattels, lands and tenements, respectively to be levied, according to the form and effect of the bail bond aforesaid, and of the acts of assembly thereof made and provided.” The bail .bond on an appeal or writ of error, is a security for the performance of conditions, and is considered in its nature a conditional judgment, forming part of the record sent up to the court above on the appeal or writ of error, and is taken in double the sum adjudged to be recovered,by the judgment conditioned to prosecute the appeal or writ of error with effect, and also to pay and satisfy, (if the judgment be affirmed,) the debt, damages and costs, and the damages and costs to be awarded in the court above for the delay of execution. Therefore this bail bond is contingent, dependent on the former judgment of the court below being affirmed, or on the appellant not prosecuting his writ of error; and before execution can be awarded on this bail bond, it must appear to the court, that the contingency has been decided. This in the present case appeared to the circuit court by the judgment of affirmance of the county court, against the appellant Sappington, and therefore the judgment of award of execution on the bail bond instanter, after the affirmance of the judgment below, was regular and pursuant to the undertaking of the sureties, or bail, in the conditions of the *371 bond. See the acts of 1785, ch. 2, sec. 2; 1794, ch. 1, sec. 64. Lill. Ent. 268, 267, 320, 499, 522. Bingham, 153, 154, 157. The state of the proceedings in the appeal in the circuit court in the cause, at the time the peal in the nature of a writ of error was taken to the supreme court, is not to be noticed. The principal judgment rendered in favor of the appellee, Whitesides, (plaintiff in the county court,) against the appellant, Sapping-ton, (defendant in the county court,) affirming the judgment of the county court, with 12¿ per cent interest and costs, can only be regarded in this court. Another judgment dependent on the principal judgment, was rendered on the appeal bond against Hickman and Ross the securities, and Sappington, who had entered into the bond with them, awarding an execution to issue against them for the monies recovered by the principal judgment.— Thisbeingthe stateof the proceedings,Sappington, the appellant, alone prayed and obtained an appeal in the nature of a writ of error, to the supreme court. It is important here to mark from which of these two judgments the appeal in error was taken, not that there is any real difficulty in making such discrimination, but from the arguments on this scire Jadas assuming a complex view, treating the case in the supreme court in 1821, when brought up there upon this appeal in error of Sapping-ton, as if either the one or the other of these judgments, or both of them together, were then before the court.— Hence it becomes necessary to ascertain which was before the court, to establish the premises on which the present oipnion of this court must be founded. As before observed, the two judgments are distinct; the one a judgment of recovery against the debtor, being a principal judgment; the other, a judgment awarding execution to issue against the bail, being a dependent judgment.— Both these judgments could not be endorsed in the same writ of error, or what is the same thing, in the same appeal in the nature of a writ of error, as forming the subject matter of it. This is the settled rule of the common law. See the authorities before cited. And the record *372 shows as clearly, that only one judgment was before the supreme court in 1S2Í, as (he law shows the legality of it. The view therefore of the counsel in their argu-as far as it regards both the principal judgment and the dependent judgment of the circuit court of 181.9, being before the supreme court in 18.21, is wholly inadmissible.
The next question is, which of the two judgments, the principal judgment or the dependent judgment, was before the court. The record speaks to this very plainly and satisfactorily. It says, “and on application of the said defendant, an appeal in the nature of a writ of error is granted to him in this cause to the next supreme court of errors and appeals, he having given bond and security as required by law.” No language can be plainer, although more formal might have been used, as “on application of the- appellant,” instead of “said defendant;” but it is to be recollected that “defendant,” is the style of the appellant, Sappinglon, running through the whole of the proceedings in the circuit court. Again, “an appeal in the nature of a writ of error is granted to him in this cause;” to this relative “him,” the antecedent is, “said defendant, in this cause;” thalis, the appellant from the county court, and is tantamount to saying, is granted to the appellant, Sappington. This language is further characteristic of the capacity in which the appeal is taken, to wit, as defendant or party to the principal judgment.
Other parts of the record also prove, that this appeal in error is exclusive of the ball,or the defendants in thedc-pender.t judgment; as the expression, “he having given bond and security;” the pronoun “he,” still has reference to the said defendant, Sappington, as itsantccedent, showing that he is the only plaintiifin error. Again; in the .bondgiven by Sappington, to prosecute his appeal in error .with effect, Hickman is his security, and the same person cannot stand in the two fold capacity of party and bail at the same time, in the same suit. Hickman being bail in .error for Sappington, the plaintiff in error, would seem *373 to forbid the possibility of his being a co-plaintiff, as “expression facit cessare taciturnAnd as for the assumption in argument, of Ross being a plaintiff in error, there is no color for such a pretence. There is no or for the appeal in error in his name, no grant of it, no bond and security given for obtaining it, all of which are necessary before a suit in error can exist, by the express enactment of the statutes of 1803, ch. 49, sec. 26, and 1811, ch. 72, sec. 11. The name of Daniel Ross is not even mentioned in taking the appeal in error.
But it was said in argument, that when the principal obtained an appeal, the court presumes it was for his securities as weli as himself. That a person can be made a party to a suit by presumption, is a position so novel, thatl confess I find great difficulty in giving it a serious thought. In this case it is a presumption against the record; and what renders it still more extravagant is, that in the present case, there must be subordinate presumptions to the principal one. We must presume that an appeal in error was prayed for by Daniel Ross; then ve must presume, that bond and security was given by him to obtain it; we must next presume it was granted to him; all of which facts are essential to constitute him a plaintiff in error, and all of which must exist, and in my opinion must appear upon the record.
But, it is again said, that usage and practice have sanctioned it in appeals. It may be the usage and practice of the cleiks, (as to which I am uninformed,) to make pl.iintifls in error, by inserting person’s names on their dockets without being warranted in doing so by the record. But this usage and practice does not make the law, neither does it make the persons whose names are inserted, parties to the suit. A point so self evident, seems not to require authorities to support it. But in deference to the counsel, one or two will be cited. One is Chitty vs. Wood, (6 Modern Rep. 42; same case, Salkeld, 649. The case was debt upon a recognizance. The plaintiffs set forth a recognizance acknowledged in the court of common pleas. Nul tiel record” was pleaded. *374 The record produced was a recognizance taken before J. Nevil in his Chambers, in London, and delivered by him in court afterwards at Westminster. It was argued, that it was a constant practice in the common pleas for upwards of twenty years, to recite recognizances taken at a judge’s chambers, as taken in court. To which Holt, Chief Justice, answered, “then they must make their entry so, or else their usage is contrary to law and not to be regarded. But the entry is made, that the recognizance was taken in London before a judge in his chambers;” and per totam curiam, “here is a variance, and so a failure of record.”
Another case is, Grant vs. Bogg, (3 East Rep. 123. This case was an action of trespass; and the defendant attempted to justify under a practice of the court, which was in the issuance of an execution, directed to a bailiff, (the person who generally executed these writs, and who received and was entitled to the poundage and emoluments for so doing,) when by law it ought to have been directed to the sheriff, and a mandate by him to the bailiff to execute. A practice of fifteen years standing, of directing the writ to the bailiff in the first instance, was pleaded and relied on in justification. But the whole court of the King’s Bench disallowed it. Lord Ellenbo-rough in delivering his opinion said, “how can we overturn the whole practice and principles of the law, by sanctioning the issuing of this writ to the bailiff of this Franchise of Ely, upon no other foundation than a practice of fifteen years, the very naming of which repudiates the right it assumes to support. This would be a dangerous and unwarrantable alteration of the law, and cannot be maintained either upon precedent or principle.” And Mr Justice Lawrence, in his opinion, says, “a practice of fifteen years only, amounts to nothing.” These decisions are of the highest authority in England, being made by the most able judges, after full argument, and are properly applicable here, being determinations at common law. They show that the usage and practice relied on in argument in this case, amounts to nothing.
*375 As to the case in Cooke’s Reports, 191, (Stump vs. Sheppard,) from the sentiments 1 entertain of the general accuracy and extensive reading of the able judge who decided that case, I must say with Lord (upon overruling a case decided in the King’s Bench twelve years before) “it certainly went by surprise.” Vide 2 Term Rep. 57. Upon the whole, 1 am of opinion, that the appeal in error before the supreme court in 1821, was an appeal in error from the principal judgment of the circuit court, and the rightful judgment of the supreme court only could be on that record, an affirmance of the principal judgment of the circuit court of November, 1819, with the addition of 12i per cent damages, under the act of 1809, ch. 49, sec. 27, and costs, against the appellant or plaintiff’in error, Sapping-ton. And upon motion, (under the act of 1807, ch. 21, sec. 3,) a dependent judgment against Sappington and Hickman, the bail in error of Sappington, upon the bail or surety bond; and that execution issue against them, for the damages of 12i per cent on the amount of the judgment in the circuit court, for the delay of execution upon that judgment, by pretence of the appeal in the nature of a writ of error to this court.
The dependent judgment of the circuit court of November, 1819, against the bail, Thomas Hickman and Daniel Ross, not being appealed from in error, never was before the supreme court at all, so that the judgment of that court against Hickman and Ross m 1821, was a nullity, they not being parties thereto. The inevitable result of which is, that the court must find the issue joined upon the plea of nul tiel record, that Thomas Whiteside’s administrator, &c. the record in his scire facias hath not maintained, but hath therein failed; and judgment for the defendants, that they go hence without day and recover their costs, &c.
The dependent judgment of the circuit court of November, 1819, against Hickman and Ross, never having been before the supreme court or acted upon by it; and the principal judgment of the same term, 1819, not hav- *376 been reversed upon the appeal in error in the supreme court, but affirmed, the first is still in full force against Hickman and Ross, and may still be proceeded upon by scire, facias, non obstante the judgment of the supreme court of 1821, but that judgment had no eflcct upon it in any way whatever. The judgment, of 1821, by affirming the principal judgment of 1819, which alone was before it, had however an indirect effect upon the dependent judgment of lbl9, by continuing and confirm-ingits force and effect, which would have ceased upon a reversal of the principal judgment.